**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| BLACK & PINK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ILLINOIS DEPARTMENT OF ) | |
| CORRECTIONS DIRECTOR JOHN ) | JURY TRIAL DEMANDED |
| BALDWIN, WARDEN SHELITH HANSBRO, ) | |
| WARDEN KESS ROBERSON, WARDEN ) | |
| VICTOR CALLOWAY, WARDEN ) | |
| CAMERON WATSON, WARDEN DANIEL ) | |
| SULLIVAN, WARDEN ROBERT MUELLER, ) | |
| WARDEN JOHN VARGA, WARDEN ) | |
| STEPHANIE DORETHY, WARDEN KAREN ) | |
| JAIMET, WARDEN DAVID RAINS, WARDEN ) | |
| JUSTIN HAMMERS, C. THOMAS HOLT, ) | |
| JESSICA STOVER, HEATHER YOUNG, ) | |
| OFFICER MICHELLE ALLEN, OFFICER RICK ) | |
| ANDERSON, OFFICER H. HETLINGER, and ) | |
| JOHN DOES 1-11, ) | |
| ) | |
| Defendants. ) | |

## **COMPLAINT**

COMES NOW Plaintiff, BLACK & PINK, by and through its counsel, for its complaint

against Defendants John Baldwin, Shelith Hansbro, Kess Roberson, Victor Calloway, Cameron

Watson, Daniel Sullivan, Robert Mueller, John Varga, Stephanie Dorethy, Karen Jaimet, David

Rains, Justin Hammers, C. Thomas Holt, Jessica Stover, Heather Young, Michelle Allen, Rick

Anderson, H. Hetlinger, and Does 1-11, states as follows:

## **INTRODUCTION**

1.     BLACK & PINK brings this action to enjoin Defendants' improper censorship of

materials that BLACK & PINK sends to LGBTQ prisoners in the Illinois Department of

Corrections ("IDOC"), in violation of the First and Fourteenth Amendments of the United States Constitution.

2.        Defendants have adopted and implemented discriminatory mail policies and practices prohibiting delivery of BLACK & PINK publications and other written forms of speech, including greeting cards and chapter updates, while failing to provide notice and an opportunity to be heard, as required by due process, to challenge that censorship. Defendants' actions violate BLACK & PINK's rights under the First and the Fourteenth Amendments of the United States Constitution. BLACK & PINK thus brings this action, pursuant to 42 U.S.C. § 1983, seeking injunctive and declaratory relief and damages to be proven at trial.

## JURISDICTION AND VENUE

3.        This action arises under the First and Fourteenth Amendments of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to BLACK & PINK by the laws of the United States.

4.        This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction over claims seeking declaratory, injunctive, and monetary relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rules 57 and 65 of the Federal Rules of Civil Procedure, against all Defendants.

5.        Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Two IDOC facilities censoring BLACK & PINK materials are located in the Northern District: Dixon Correctional Center, Illinois River Correctional Center, and Hill Correctional Center. Many of the events giving rise to the claims asserted herein therefore occurred within this judicial district. On information and belief, all Defendants are residents of the state of Illinois.

**PARTIES**

6.      Plaintiff is the Chicago Chapter of BLACK & PINK, a national not-for-profit charitable corporation recognized under § 501(c)(3) of the Internal Revenue Code. Founded in 2004, BLACK & PINK provides prisoners with news updates about LGBTQ issues both inside and outside prison. The organization also provides prisoners with other publications focusing on prisoner rights and LGBTQ issues. Finally, BLACK & PINK corresponds with LGBTQ prisoners through its pen pal programs, as a way to help these prisoners feel less isolated.

7.      Defendant John R. Baldwin ("Baldwin") is, and at all relevant times herein mentioned was, the Director of IDOC, the state agency that manages the correctional facilities within the State of Illinois. Defendant John Baldwin has ultimate responsibility for the promulgation and implementation of IDOC policies, procedures, and practices and for the management of IDOC. As to all claims presented herein against him, Defendant Baldwin is being sued in his official capacity for injunctive and declaratory relief and for damages in his individual capacity. At all relevant times, Defendant Baldwin has acted under color of state law.

8.      Defendant Shelith Hasbro ("Hansbro") was at all relevant times, the Warden of Decatur Correctional Center ("Decatur"), a prison under the control of IDOC within the State of Illinois. Defendant Hansbro was responsible for the execution of IDOC policies, procedures, and practices at Decatur, including the approval of publication censorship decisions. As to all claims presented herein against her, Defendant Hansbro is being sued in her individual capacity for damages. At all relevant times, Defendant Hansbro acted under color of state law.

9.      Defendant Kess Roberson ("Roberson") is, and on information and belief at all relevant times herein mentioned was, the Warden of Lincoln Correctional Center ("Lincoln"), a prison under the control of IDOC within the State of Illinois. Defendant Roberson has

3

responsibility for the execution of IDOC policies, procedures, and practices at Lincoln, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Roberson is being sued in his individual capacity for damages. At all relevant times, Defendant Roberson has acted under color of state law.

10.     Defendant Victor Calloway ("Calloway"), is, and on information and belief at all relevant times herein mentioned was, the Warden of Danville Correctional Center ("Danville"), a prison under the control of IDOC within the State of Illinois. Defendant Calloway has responsibility for the execution of IDOC policies, procedures, and practices at Danville, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Calloway is being sued in his individual capacity for damages. At all relevant times, Defendant Calloway has acted under color of state law.

11.     Defendant Cameron Watson ("Watson") was, at all relevant times, the Warden of Western Illinois Correctional Center ("Western Illinois"), a prison under the control of IDOC within the State of Illinois. Defendant Watson had responsibility for the execution of IDOC policies, procedures, and practices at Western Illinois, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Watson is being sued in his individual capacity for damages. At all relevant times, Defendant Watson acted under color of state law.

12.     Defendant David Sullivan ("Sullivan") is, and on information and belief at all relevant times herein mentioned was, the Warden of Big Muddy River Correctional Center ("Big Muddy"), a prison under the control of IDOC within the State of Illinois. Defendant Sullivan has responsibility for the execution of IDOC policies, procedures, and practices at Big Muddy, including the approval of publication censorship decisions. As to all claims presented herein

4

against him, Defendant Sullivan is being sued in his individual capacity for damages. At all relevant times, Defendant Sullivan has acted under color of state law.

13. Defendant Robert Mueller ("Mueller") is, and on information and belief at all relevant times herein mentioned was, the Warden of Centralia Correctional Center ("Centralia"), a prison under the control of IDOC within the State of Illinois. Defendant Mueller has responsibility for the execution of IDOC policies, procedures, and practices at Centralia, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Mueller is being sued in his individual capacity for damages. At all relevant times, Defendant Mueller has acted under color of state law.

14. Defendant John Varga ("Varga") is, and on information and belief at all relevant times herein mentioned was, the Warden of Dixon Correctional Center ("Dixon"), a prison under the control of IDOC within the State of Illinois. Defendant Varga has responsibility for the execution of IDOC policies, procedures, and practices at Dixon, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Varga is being sued in his individual capacity for damages. At all relevant times, Defendant Varga has acted under color of state law.

15. Defendant Stephanie Dorethy ("Dorethy") is, and on information and belief at all relevant times herein mentioned was, the Warden of Hill Correctional Center ("Hill"), a prison under the control of IDOC within the State of Illinois. Defendant Dorethy has responsibility for the execution of IDOC policies, procedures, and practices at Hill, including the approval of publication censorship decisions. As to all claims presented herein against her, Defendant Dorethy is being sued in her individual capacity for damages. At all relevant times, Defendant Dorethy has acted under color of state law.

16.     Defendant Karen Jaimet ("Jaimet") is, and on information and belief at all relevant times herein mentioned was, the Warden of Pinckneyville Correctional Center ("Pinckneyville"), a prison under the control of IDOC, within the State of Illinois. Defendant Jaimet has responsibility for the execution of IDOC policies, procedures, and practices at Pinckneyville, including the approval of publication censorship decisions. As to all claims presented herein against her, Defendant Jaimet is being sued in her individual capacity for damages. At all relevant times, Defendant Jaimet has acted under color of state law.

17.     Defendant David Rains ("Rains") is, and on information and belief at all relevant times herein mentioned was, the Warden of Robinson Correctional Center ("Robinson"), a prison under the control of IDOC, within the State of Illinois. Defendant Rains has responsibility for the execution of IDOC policies, procedures, and practices at Pinckneyville, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Rains is being sued in his individual capacity for damages. At all relevant times, Defendant Rains has acted under color of state law.

18.     Defendant Justin Hammers ("Hammers") is, and on information and belief at all relevant times herein mentioned was, the Warden of Illinois River Correctional Center ("Illinois River"), a prison under the control of IDOC, within the State of Illinois. Defendant Hammers has responsibility for the execution of IDOC policies, procedures, and practices at Illinois River, including the approval of publication censorship decisions. As to all claims presented herein against him, Defendant Hammers is being sued in his individual capacity for damages. At all relevant times, Defendant Hammers has acted under color of state law.

19.     Defendant Jessica Stover ("Stover") is, and on information and belief at all relevant times herein mentioned was, a social worker for the SDPP at Big Muddy River

6

Correctional Center. Defendant Stover carried out policies, procedures, and practices at the SDPP in regards to publication review and censorship. As to all claims presented herein against her, Defendant Stover is being sued in her individual capacity for damages. At all relevant times, Defendant Stover has acted under color of state law.

20.     Defendant Heather Young ("Young") is, and on information and belief at all relevant times herein mentioned was, a social worker for the SDPP at Big Muddy River Correctional Center. Defendant Young carried out policies, procedures, and practices at the SDPP in regards to publication review and censorship. As to all claims presented herein against her, Defendant Young is being sued in her individual capacity for damages. At all relevant times, Defendant Young has acted under color of state law.

21.     Defendant Michelle Allen ("Allen") is, and on information and belief at all relevant times herein mentioned was, a Publication Review Officer at Western Illinois. Defendant Allen carried out IDOC policies, procedures, and practices at Western Illinois in regards to publication review and censorship. As to all claims presented herein against her, Defendant Allen is being sued in her individual capacity for damages. At all relevant times, Defendant Allen has acted under color of state law.

22.     Defendant Rick Anderson ("Anderson"), is, and on information and belief at all relevant times herein mentioned was, a Publication Review Officer at Western Illinois. Defendant Anderson carried out IDOC policies, procedures, and practices at Western Illinois in regards to publication review and censorship. As to all claims presented herein against him, Defendant Anderson is being sued in his individual capacity for damages. At all relevant times, Defendant Anderson has acted under color of state law.

23.     Defendant H. Hetlinger ("Hetlinger"), is, and on information and belief at all relevant times herein mentioned was, a Publication Review Officer at Western Illinois. Defendant Hetlinger carried out IDOC policies, procedures, and practices at Western Illinois in regards to publication review and censorship. As to all claims presented herein against him, Defendant Hetlinger is being sued in his individual capacity for damages. At all relevant times, Defendant Hetlinger has acted under color of state law.

24.     The true names and identities of Defendants DOES 1 through 11 are presently unknown to BLACK & PINK. Each of Defendants Does 1 through 11 works as a Publication Review Officer or in a role with similar responsibilities for adopting and/or implementing mail policies. Each of Defendants DOES 1 through 11 were personally involved in the adoption and/or implementation of the mail policies and practices at the IDOC facilities, and/or were responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and/or control of IDOC facilities staff who interpret and implement these mail policies. BLACK & PINK will seek to amend this complaint as soon as the true names and identifies of Defendants DOES 1 through 11 have been ascertained.

## FACTUAL ALLEGATIONS

### A.     BLACK & PINK'S MISSION

25.     For more than 12 years, BLACK & PINK's mission has been to provide LGBTQ prisoners with allies on the outside who support LGBTQ rights. BLACK & PINK seeks to achieve this goal through advocacy, education, direct service, and organizing. BLACK & PINK has local chapters throughout the country, including the Chicago chapter which is the plaintiff in this case, where members can collaborate to help prisoners residing in nearby prisons and to discuss local LGBTQ and prisoners' rights issues.

26.     The purpose of BLACK & PINK is to educate LGBTQ prisoners and the public about the incarceration experience of LGBTQ persons. BLACK & PINK engages in core protected speech and expressive conduct on matters of public concern, such as the operation of prison facilities, prison conditions, prisoner health and safety, and prisoners' rights, particularly designed for LGBTQ prisoners. BLACK & PINK's publications, including those specifically published by Plaintiff, often contain political speech and social commentary, which are core First Amendment rights and are entitled to the highest protection afforded by the U.S. Constitution.

## B.     BLACK & PINK'S PUBLICATIONS AND MAILINGS

27.     To further its mission, the national organization of BLACK & PINK distributes a monthly newsletter to over 13,000 prisoners in correctional facilities across the United States, including the Federal Bureau of Prisons. Plaintiff, the BLACK & PINK Chicago Chapter, publishes and distributes additional materials specifically to LGBTQ prisoners in Illinois, described below:

a.     BLACK & PINK publishes and distributes introductory letters, which serve to introduce Illinois LGBTQ prisoners to the organization's mission. These letters include a form that prisoners can fill out to indicate if they are interested in receiving additional BLACK & PINK materials.

b.     BLACK & PINK publishes zines about solitary confinement, which contain solitary-related artwork, quotes from prisoners, and information about ongoing political challenges to solitary.

c.     BLACK & PINK publishes chapter updates, which it sends to its Illinois LGBTQ prisoner-subscribers. Chapter updates document ongoing events and projects related to LGBTQ and prisoners' rights issues, and are approximately 2-pages long.

9

d.        BLACK & PINK also sends birthday and holiday cards to its subscribers. These cards contain simple birthday or holiday greetings and are signed by Black & Pink organizers on the outside.

e.        BLACK & PINK has published and distributed a survey regarding the proposed Cop Academy on the Westside of Chicago to its subscribers.

28.        BLACK & PINK is very popular among Illinois prisoners, with more than 900 subscribers.

29.        BLACK & PINK is only able to communicate with Illinois prisoners through the mail, and does not have other means of gaining new subscribers or contacting current subscribers.

## C. CENSORSHIP AT IDOC FACILITIES

30.        The First Amendment of the United States Constitution protects BLACK & PINK's right to communicate with prisoners who are incarcerated within the IDOC. Regulations, policies, or practices that restrict the receipt of mail by prisoners are invalid unless they are rationally related to a legitimate penological interest.

31.        The Fourteenth Amendment of the United States Constitution requires that publishers receive notice of and be allowed to challenge restrictions on prisoners' receipt of mail. Regulations, policies, or practices that do not provide these minimum procedural safeguards are invalid. Fourteenth Amendment rights are also violated where procedural safeguards are not followed as applied to a particular publisher.

32.        The Fourteenth Amendment of the United States Constitution also prohibits discrimination based on gender identity and sexual orientation, where regulations or policies are not substantially related to an important government interest.

10

33. Various prisons within IDOC's system do not comply with the First and/or Fourteenth Amendments. Defendants' policies and practices have deprived and will continue to deprive BLACK & PINK of the right to distribute its materials to prisoners, and of its right to notice and an opportunity to appeal when its publications are not delivered to prisoner subscribers.

34. Defendants have intentionally singled out BLACK & PINK, an LGBTQ support organization with LGBTQ members and subscribers, for censorship, based on status of its members and subscribers as LGBTQ people.

35. As described in further detail below, certain prisons within the state of Illinois have withheld all or part of BLACK & PINK's publications. BLACK & PINK is informed and thereon believes that, as required by ILAC 525.230(a) and 525.230(d),[1] at least one officer at each prison, as well as the Warden of each prison, had direct knowledge of and was directly involved in each and every instance of censorship complained of below.

36. BLACK & PINK is aware of at least the following specific examples of improper censorship and/or lack of notice by prisons within IDOC:

## 1. CENSORSHIP AT DECATUR

37. BLACK & PINK is informed and believes and thereon alleges that Decatur has refused to deliver at BLACK & PINK publications on at least 11 occasions, without providing rejection slips to prisoners or notice to BLACK & PINK. The censored publications include as follows:

---

[1] ILAC 525.230(a) provides that "A Publication Review Officer, hereafter referred to as Officer, shall review publications..."

ILAC 525.230(d) provides that "Any recommendation for denial shall be forwarded to the Chief Administrative Officer with an explanation. If the Chief Administrative Officer concurs with the recommendation to deny the publication, the publication shall be disapproved." As used in that section, Chief Administrative Officer refers to the prison Warden.

a.     4 Copies of the 2016 Stop Solitary Zine, mailed on September 14, 2016 and returned to sender September 23 and September 26, 2016;

b.     3 Introductory letters, mailed on July 11, 2017 and returned to sender on July 21, 2017;

c.     1 Birthday card, mailed on September 17, 2017 and returned to sender on September 21, 2017; and

d.     3 Copies of the 2017 Stop Solitary Zine, mailed March 27, 2017 and returned to sender March 31, 2017 and April 2, 2017.

38.     Each of these items were individually addressed and mailed to people incarcerated at Decatur. BLACK & PINK is informed and believes that, although these materials were properly addressed and delivered to Decatur, the issues were withheld from delivery by staff at the facility. Seven of the envelopes were marked as "refused", when upon information and belief, they were never offered to the prisoner-subscriber. Three envelopes were marked "Return to sender, unable to forward".

39.     BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Decatur, or stating a reason it had been censored. BLACK & PINK also never received an opportunity to appeal any censorship decisions. This censorship of Black & Pink's materials and the failure of Hansbro and one or more DOES to provide adequate notice and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth Amendment rights, as further detailed below.

### 2.     CENSORSHIP AT LINCOLN

40.     BLACK & PINK is informed and believes and thereon alleges that Lincoln has improperly censored its materials on at least one occasion.

12

41.     BLACK & PINK is informed and believes and thereon alleges that at least one prisoner did not receive the 2016 Stop Solitary Zine, which was sent on September 14, 2016, and returned to BLACK & PINK on September 23, 2016. This item was individually addressed and mailed to a prisoner-subscriber incarcerated at Lincoln. BLACK & PINK is informed and believes that, although this publication was properly delivered to Lincoln, it was withheld from delivery by staff at the facility. The envelope was stamped "Contraband", and John Doe 1 wrote "Contains information detrimental to the safety and security of the institution."

42.     BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Lincoln, other than the handwritten note on the envelope returned to BLACK & PINK. BLACK & PINK never received an opportunity to appeal any censorship decisions. This censorship of BLACK & PINK and the failure of Roberson and one or more DOES to provide adequate notice and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth Amendment rights, as further detailed below.

### 3.     CENSORSHIP AT DANVILLE

43.     BLACK & PINK is informed and believes and thereon alleges that Danville has improperly refused to deliver or rejected its materials on at least 26 occasions. Censored publications include the following:

a.     7 Copies of the 2016 Stop Solitary Zine, mailed on September 14, 2016 and returned to sender October 4 through October 17, 2016;

b.     7 Introductory letters, mailed on December 6, 2016 and April 9, 2018, and returned to sender on December 31, 2016 and April 19, 2018;

c.     5 Copies of the 2017 Stop Solitary Zine, mailed March 27, 2017 and returned to sender April 16 through 18, 2017;

> d.     7 Copies of the April 2018 Chicago Chapter update, mailed April 9, 2017
> and returned to sender April 15 through 19, 2018.

44.     Each of these items were individually addressed and mailed to the prisoners
incarcerated at Danville. BLACK & PINK is informed and believes that, although each of those
publications was properly delivered to Danville, the items were withheld from delivery by staff
at the facility.

45.     Upon information and belief, Danville has a blanket ban on BLACK & PINK
materials. In particular, at least one package containing an introductory letter from BLACK &
PINK was returned from Danville with a handwritten marking reading "Black & Pink-Banned
Correspondence". At least 11 envelopes were marked as "refused", when upon information and
belief, they were never offered to the prisoner-subscriber. Five envelopes were marked only
"Return to sender, unable to forward". At least 6 envelopes from 2016, and 5 envelopes sent in
2018 were marked "Correspondence Not Approved".

46.     Upon information and belief, at least two rejection slips given to prisoners
regarding the 2016 Stop Solitary Zine listed the reason for censorship as "Inappropriate
Materials". Upon information and belief, this is the only reason ever given for Danville's
censorship of BLACK & PINK publications.

47.     BLACK & PINK has never received any notice from defendants advising it that
any of its mail had been censored at Danville, or stating a reason it had been censored. BLACK
& PINK also never received an opportunity to appeal any censorship decisions. This censorship
of BLACK & PINK and the failure of Calloway and one or more DOES to provide adequate
notice and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth
Amendment rights, as further detailed below.

### 4.      CENSORSHIP AT WESTERN ILLINOIS

48.      BLACK & PINK is informed and believes and thereon alleges that Western Illinois has improperly censored its materials on at least three occasions. Censored publications include the following:

> a.      1 Copy of a publication regarding prison resistance in Indiana, rejected on July 25, 2016;
>
> b.      1 Copy of Pontiac's Prisoners Support Coalition Newsletter, rejected on July 25, 2016;
>
> c.      1 Introductory letter, mailed on December 6, 2016 and returned to sender on December 31, 2016.

49.      BLACK & PINK is informed and believes and thereon alleges that national publications, including the 2015 coloring book and the May 2016, June 2016, July/August 2016, September 2016, November 2016, and October/November 2017, and January 2018 issues of the newsletter were also censored by staff at Western Illinois. BLACK & PINK is informed and believes that Western Illinois sent notices of censorship relating to those issues of its publication to various subscribers.

50.      Upon information and belief, Western Illinois has a policy and/or practice of disciplining prisoners that receive mail from BLACK & PINK.

51.      BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Western Illinois, or stating a reason it had been censored. BLACK & PINK also never received an opportunity to appeal any censorship decisions. Watson, Allen, Anderson, and Hetlinger and one or more DOES' censorship of BLACK & PINK

materials and their failure of to provide adequate notice and explanation to BLACK & PINK

violates BLACK & PINK's First and Fourteenth Amendment rights, as further detailed below.

**5.      CENSORSHIP AT BIG MUDDY**

52.     BLACK & PINK is informed and believes and thereon alleges that Big Muddy

has improperly refused to deliver or rejected BLACK & PINK publications on at least 106

occasions. Censored materials include as follows:

> a.      54 Stop Solitary Zines, mailed March 27, 2017 and returned to sender
>
> during April and May of 2017;
>
> b.      46 Copies of the April 2018 Chicago Chapter update, mailed April 9, 2017
>
> and returned to sender April 15, 2018.
>
> c.      6 Holiday Cards with Holiday Chapter Updates, mailed in December of
>
> 2017 and returned to sender February 3 through 5, 2018.

53.     Each of these items were individually addressed and mailed to the prisoners

incarcerated at Big Muddy. BLACK & PINK is informed and believes that, although each of

those publications was properly delivered to Big Muddy, the items were withheld from delivery

by staff at the facility.

54.     BLACK & PINK is informed and believes and thereon alleges that Big Muddy is

improperly marking mail as "Refused" or "Ref", indicating that prisoners refused mail, when

prisoners did not actually refuse the mail. Upon information and belief, Big Muddy is censoring

the mail before offering it to the prisoners, marking this mail as refused and returning it to

BLACK & PINK, without notice of censorship or opportunity to appeal.

55.     Additionally, Big Muddy has censored and refused to deliver at least 22 national

BLACK & PINK newspapers to prisoner-subscribers.

56.     In particular, Plaintiff is informed and believes and thereon alleges that civilly committed persons in the Sexually Dangerous Persons Program ("SDPP") are routinely being denied BLACK & PINK mailings, and have been denied BLACK & PINK materials since at least 2016.

57.     BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Big Muddy, or stating a reason it had been censored. BLACK & PINK also never received an opportunity to appeal any censorship decisions. This censorship of BLACK & PINK and the failure of Sullivan, Holt, Stover, Young, and one or more DOES to provide adequate notice and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth Amendment rights, as further detailed below.

### 6.     CENSORSHIP AT CENTRALIA

58.     BLACK & PINK is informed and believes and thereon alleges that at least one prisoner subscriber incarcerated at Centralia did not receive a complete issue of a BLACK & PINK publication.

59.     BLACK & PINK is informed and believes and thereon alleges that at least one zine in 2017 was not delivered to a subscriber incarcerated at Centralia. This publication was individually addressed and mailed to a prisoner incarcerated at Centralia. BLACK & PINK is informed and believes that, although this publication was properly delivered to Centralia, the item was withheld from delivery by staff at the facility.

60.     BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Centralia, or stating a reason it had been censored. BLACK & PINK also never received an opportunity to appeal any censorship decisions. This censorship of Black & PINK and the failure of Mueller and one or more DOES to provide adequate notice

17

and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth

Amendment rights, as further detailed below.

### 7. CENSORSHIP AT DIXON

61.     BLACK & PINK is informed and believes and thereon alleges that Dixon has

improperly censored its materials on at least 41 occasions. Censored publications include the

following:

> a.      2 copies of the 2017 Stop Solitary Zine, mailed March 27, 2017 and
>
>  returned to sender during April 7 and 9, 2017;
>
> b.      39 copies of the 2016 Stop Solitary Zine, mailed September 14, 2016 and
>
>  returned to sender during September 2016.

62.     These publications were individually addressed and mailed to prisoners

incarcerated at Dixon. BLACK & PINK is informed and believes that, although each of those

publications was properly delivered to Dixon, the issues were withheld from delivery by staff at

the facility.

63.     As Dixon officials put it, they "have refused an excessive amount of postage from

the Pink & Black Organization and will continue to do so until [their] position is made clear or

until this postage is labeled as contraband."

64.     BLACK & PINK has never received any notice from defendants advising it that

any of its mail had been censored at Dixon, or stating a reason it had been censored. BLACK &

PINK also never received an opportunity to appeal any censorship decisions. This censorship of

BLACK & PINK's publications and the failure of Varga and one or more DOES to provide

adequate notice and explanation to BLACK & PINK violates BLACK & PINK's First and

Fourteenth Amendment rights, as further detailed below.

## 8. CENSORSHIP AT HILL

65.     BLACK & PINK is informed and believes and thereon alleges that at least one prisoner subscriber incarcerated at Hill did not receive a complete publication from BLACK & PINK.

66.     BLACK & PINK is informed and believes and thereon alleges that at least one copy of the Stop Solitary Zine, mailed September 14, 2016, was not delivered to a subscriber incarcerated at Hill. This publication was individually addressed and mailed to at least one prisoner incarcerated at Hill. BLACK & PINK is informed and believes that, although this publication was properly delivered to Hill, the items were withheld from delivery by staff at the facility. The envelope was marked by John Doe as "Correspondence not approved" and returned to BLACK & PINK on October 5, 2016.

67.     BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Hill, or stating a reason it had been censored. BLACK & PINK also never received an opportunity to appeal any censorship decisions. This censorship of Black & PINK and the failure of Dorethy and one or more DOES to provide adequate notice and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth Amendment rights, as further detailed below.

## 9. CENSORSHIP AT PINCKNEYVILLE

68.     BLACK & PINK is informed and believes and thereon alleges that Pinckneyville has improperly censored its materials on at least two occasions.

69.     BLACK & PINK is informed and believes and thereon alleges that at least two copies of the 2016 Stop Solitary Zine, mailed September 14, 2016, were not delivered to subscribers at Pinckneyville. This publication was individually addressed and mailed to the

prisoners. BLACK & PINK is informed and believes that, although this publication was properly delivered to Pinckneyville, the items were withheld from delivery by staff at the facility. The envelopes were each marked by John Doe as "Correspondence not approved" and returned to BLACK & PINK in October of 2016.

70.     Upon information and belief, the censorship of Plaintiff BLACK & PINK (Chicago Chapter) materials is part of Pinckneyville's broader censorship of all BLACK & PINK materials. During 2016 and 2017, at least fifty of the newsletters published by the national organization BLACK & PINK were not delivered to prisoners at Pinckneyville.

71.     BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Pinckneyville, or stating a reason it had been censored. BLACK & PINK also never received an opportunity to appeal any censorship decisions. This censorship of BLACK & PINK's publications and the failure of Jaimet and one or more DOES to provide adequate notice and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth Amendment rights, as further detailed below.

**10.     CENSORSHIP AT ROBINSON**

72.     BLACK & PINK is informed and believes and thereon alleges that Robinson has improperly censored its materials on at least one occasion.

73.     BLACK & PINK is informed and believes and thereon alleges that at least one copy of the 2017 Stop Solitary Zine, mailed April 7, 2017 was not delivered to a prisoner subscriber at Robinson. This publication was individually addressed and mailed to the prisoner. BLACK & PINK is informed and believes that, although this publication was properly delivered to Robinson, the item was withheld from delivery by staff at the facility, and returned to sender on April 7, 2017.

20

74.     Upon information and belief, the censorship of Plaintiff BLACK & PINK (Chicago Chapter) materials is part of Robinson's broader censorship of all BLACK & PINK materials. At least three prisoner subscribers incarcerated at Robinson were denied the December 2016 issue of BLACK & PINK's national newsletter. Each of these issues was individually addressed and mailed to the subscribers at Robinson. BLACK & PINK is informed and believes that, although each of those issues was properly delivered to Robinson, the publications were withheld from delivery by staff at the facility.

75.     BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Robinson, or stating a reason it had been censored. BLACK & PINK also never received an opportunity to appeal any censorship decisions. This censorship of BLACK & PINK's publications and the failure of Rains and one or more DOES to provide adequate notice and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth Amendment rights, as further detailed below.

## 11.     CENSORSHIP AT ILLINOIS RIVER

76.     BLACK & PINK is informed and believes and thereon alleges that Illinois River has improperly censored its materials on at least 9 occasions. Censored materials include the following:

a.     4 pen pal information letters, mailed December 6, 2016 and returned to sender in December 2016;

b.     1 birthday card, mailed September 23, 2016 and returned to sender October 17, 2016;

c.     3 copies of Stop Solitary Zine 2016, mailed September 14, 2016 and returned to sender October 12, 2016.

77. These publications were individually addressed and mailed to prisoners incarcerated at Illinois River. BLACK & PINK is informed and believes that, although these publications were properly delivered to Illinois River, the items were withheld from delivery by staff at the facility.

78. Additionally, upon information and belief, Illinois River improperly censors pen-pal letters coming through the BLACK & PINK pen-pal program. Plaintiff is aware of at least three pen pal letters which were improperly denied by the facility as an "item not permitted in institution". One of these was a congratulatory letter regarding a prisoner's pursuit of an academic degree; another was regarding that same prisoner's health.

79. BLACK & PINK has never received any notice from defendants advising it that any of its mail had been censored at Illinois River, or stating a reason it had been censored. BLACK & PINK also never received an opportunity to appeal any censorship decisions. This censorship of Black & PINK and the failure of Hammers and one or more DOES to provide adequate notice and explanation to BLACK & PINK violates BLACK & PINK's First and Fourteenth Amendment rights, as further detailed below.

## 12. Coordination of Censorship

80. Upon information and belief, the above described incidents of censorship are part of a coordinated effort within IDOC to impose a blanket ban on BLACK & PINK materials.

81. Multiple facilities have used the same language when rejecting Black & Pink materials. When rejecting zines, Western Illinois, Centralia, Danville, Decatur, Dixon, Hill, Big Muddy River, Lincoln, Pinckneyville, and Robinson, all informed prisoners as follows:

a.     "The Solitary Zine promotes violence with strong language and strange artwork found on several pages. If we suspect that mail being sent to prisoners is encouraging any sort of rebellious attitude, we must keep that mail from them."

82.     When rejecting the holiday chapter mailing, including a holiday card and update, Western Illinois and Danville informed prisoners as follows:

b.     "We are discouraging communication between our prisoners and the Pink & Black organization, so we cannot allow the receiving of more propaganda."

**SUMMARY**

84.     In each case where materials mailed by BLACK & PINK were censored by a specific prison, those same materials were delivered to people housed at other prisons operated by the IDOC.

85.     In adopting and implementing the above censorship policies and practices, Defendants have knowingly violated, continue to violate, and are reasonably expected to violate in the future, BLACK & PINK's constitutional rights, and have caused BLACK & PINK serious and irreparable harm including, but not limited to: suppression of its political message, frustration of its organizational mission, loss of its ability to recruit new supporters, subscribers, and writers, loss of subscriptions, and diversion of its resources. Absent intervention by this Court these actions will continue and BLACK & PINK will be subjected to continuation of the same irreparable and serious injuries.

86.     The above violations of BLACK & PINK's rights and harms to BLACK & PINK were caused by mail and censorship policies adopted or approved by Defendant Baldwin in his capacity as head of IDOC. In the alternative, Defendant Baldwin has failed to implement policies and procedures to protect the First and Fourteenth Amendment rights of people sending mail to

23

prisoners, despite his actual knowledge of the arbitrary and capricious decisions made by mailroom personnel.

87.     The individual Defendants named herein are responsible for, or personally participated in, creating and implementing these unconstitutional mail and censorship policies, practices, and customs, and for training and supervising the mail staff at the various IDOC facilities who carry out these policies and whose conduct has injured and continues to injure BLACK & PINK.

88.     Defendants knowingly and intentionally discriminate against BLACK & PINK based on the LGBTQ status of their members and subscribers. Defendants also target BLACK & PINK materials for censorship because of the particular political viewpoint of BLACK & PINK, which promotes criminal justice reform.

89.     Defendants' unconstitutional policy, practices, and customs are ongoing and continue to violate BLACK & PINK's rights, and as such BLACK & PINK has no adequate remedy at law.

90.     BLACK & PINK is entitled to injunctive relief requiring Baldwin to prohibit Defendants from refusing to deliver or refusing to allow delivery of publications, books, informational letters, birthday greetings, and other correspondence from BLACK & PINK, and prohibiting Defendants from censoring mail without due process of law.

91.     As a result of the foregoing, BLACK & PINK seeks compensatory and punitive damages against the individual Defendants.

**COUNT I: VIOLATION OF THE FIRST AMENDMENT—42 U.S.C. § 1983**

92.     BLACK & PINK re-alleges and incorporates by reference herein all of the allegations contained in the above paragraphs.

24

93. The acts described above constitute violations of BLACK & PINK's rights under the First Amendment of the United States Constitution.

94. BLACK & PINK has a constitutionally protected liberty interest in communicating with incarcerated individuals, a right clearly established under existing case law.

95. The conduct of Defendants was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference.

96. BLACK & PINK's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which were and are the moving force of the violations.

97. Defendants' acts described above have caused damages to BLACK & PINK, and if not enjoined, will continue to cause damages to BLACK & PINK.

98. BLACK & PINK seeks injunctive relief against John Baldwin in his official capacity, and nominal and compensatory damages against all Defendants. BLACK & PINK seeks punitive damages against the individual Defendants in their individual capacities.

## COUNT II: VIOLATION OF THE FOURTEENTH AMENDMENT (DUE PROCESS)—42 U.S.C. § 1983

99. BLACK & PINK re-alleges and incorporates by reference herein all of the allegations contained in the above paragraphs.

100. The acts described above constitute violations of BLACK & PINK's rights under the Fourteenth Amendment of the United States Constitution.

101. Because BLACK & PINK has a liberty interest in communicating with prisoners, BLACK & PINK has a right under the Due Process Clause of the Fourteenth Amendment to receive notice of and an opportunity to appeal Defendants' decisions to censor their written speech.

25

102.     Defendants' policies and practices fail to provide BLACK & PINK with adequate notice and an opportunity to be heard.

103.     The conduct of Defendants was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference.

104.     BLACK & PINK's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which are and were the moving force of the violations.

105.     Defendants' acts described above have caused damages to BLACK & PINK, and if not enjoined, will continue to cause damage to BLACK & PINK.

106.     BLACK & PINK seeks injunctive relief against John Baldwin in his official capacity, and nominal and compensatory damages against all Defendants. BLACK & PINK seeks punitive damages against the individual Defendants in their individual capacities.

### COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT (EQUAL PROTECTION)—42 U.S.C. § 1983

107.     BLACK & PINK re-alleges and incorporates by reference herein all of the allegations contained in the above paragraphs.

108.     The acts described above constitute violations of BLACK & PINK's rights under the Fourteenth Amendment of the United States Constitution.

109.     Defendants' censorship of BLACK & PINK materials is discriminatory, based on the sexual orientation and gender identity of LGBTQ organizations and prisoners.

110.     Defendants' discriminatory censorship of BLACK & PINK materials is not substantially related to an important government interest, nor is it even rationally related to a legitimate penological interest. The only explanation for Defendants' censorship of BLACK &

PINK materials is discrimination against LGBTQ people, because they do not similarly censor materials for non-LGBTQ organizations or prisoners.

111.     BLACK & PINK's injuries and the violations of its constitutional rights were directly and proximately caused by the policies and practices of Defendants, which are and were the moving force of the violations.

112.     Defendants' acts described above have caused damages to BLACK & PINK, and if not enjoined, will continue to cause damage to BLACK & PINK.

113.     BLACK & PINK seeks injunctive relief against John Baldwin in his official capacity, and nominal and compensatory damages against all Defendants. BLACK & PINK seeks punitive damages against the individual Defendants in their individual capacities.

## RELIEF REQUESTED

WHEREFORE, BLACK & PINK respectfully requests judgment against Defendants, jointly and severally, for the following:

A.  A declaration that Defendants' policies and practices violate the Constitution;

B.  A preliminary and permanent injunction requiring Baldwin to prohibit Defendants from continuing to violate the Constitution, and providing other equitable relief;

C.  An award of compensatory, punitive, and nominal damages;

D.  An award of full costs and attorneys' fees arising out of this litigation; and

E.  Any and other further relief this Court may deem just and appropriate.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, BLACK & PINK hereby demands a trial by jury in this action of all issues so triable.

Dated:  October 18, 2018                    Respectfully submitted,

                                            **BLACK & PINK**

                                            By: _/s/ Elizabeth Mazur_____
                                            One of its attorneys


Sheila A. Bedi
Vanessa del Valle
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 E. Chicago Avenue
Chicago, IL 60611
(312) 503-1271

Alan Mills
Elizabeth Mazur
Nicole Schult
Uptown People's Law Center
4413 N. Sheridan
Chicago, IL 60640
(773) 769-1411