**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BLACK & PINK, | ) | |
| | ) | Case No. 18-cv-6986 |
| Plaintiff, | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| v. | ) | |
| | ) | |
| ILLINOIS DEPARTMENT OF | ) | |
| CORRECTIONS DIRECTOR JOHN | ) | |
| BALDWIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Black & Pink brings this § 1983 action to enjoin Defendants' allegedly improper censorship of materials Plaintiff sends to LGBTQ prisoners in the Illinois Department of Corrections ("IDOC"). Plaintiff alleges that Defendants' censorship decisions violate the First and Fourteenth Amendments of the United States Constitution by preventing Plaintiff from communicating with inmates. Plaintiff also alleges a violation of the Equal Protection Clause. Defendant John Baldwin, the former Director of IDOC, has moved for judgment on the pleadings on the claims brought against him in his individual capacity [98]. For the reasons that follow, Baldwin's motion [98] is denied.

## I.     Background

Plaintiff is the Chicago Chapter of Black & Pink, a national not-for-profit charitable corporation that provides prisoners with news updates about LGBTQ issues inside and outside prison. Plaintiff also provides prisoners with other publications focusing on prisoner rights and LGBTQ issues. In addition, Plaintiff corresponds with LGBTQ prisoners through its pen pal programs, as a way to help those prisoners feel less isolated. Defendant Baldwin is the former

Director of IDOC, the state agency that manages the correctional facilities within the State of Illinois. The complaint alleges that Baldwin had ultimate responsibility for the promulgation and implementation of IDOC policies, procedures, and practices and for the management of IDOC. See [42] at ¶ 7. The complaint also names as Defendants the wardens of individual IDOC correctional centers and a number of other prison officials, who are not parties to the motion currently before the Court.

According to the allegations of the complaint, which must be accepted as true at this stage of the case, certain prisons in the IDOC system have withheld all or part of Plaintiff's publications. Some of the items have been censored explicitly because of their content. On other occasions, the reasons given have allegedly "been pretextual, and have not been based on any published rule or regulation." [42] at ¶ 12. Plaintiff has never received notice of the proposed censorship of its publications and correspondence. It also has not been provided with any opportunity to be heard so that it can challenge censorship decisions. The complaint provides dozens of specific examples of allegedly unconstitutional censorship of Black & Pink publications at specific IDOC facilities. See *id.* at ¶¶ 33-86. It further alleges that the violations of Plaintiff's constitutional rights were caused by mail and censorship policies adopted or approved by Baldwin in his capacity as head of IDOC. In the alternative, the complaint alleges, Baldwin failed to implement policies and procedures to protect the First and Fourteenth Amendment rights of people sending mail to prisoners, despite his actual knowledge of the arbitrary and capricious decisions made by mailroom personnel. *Id.* at ¶ 86. In addition, Plaintiff alleges that Defendants' censorship of its publications is discriminatory, based on the sexual orientation and gender identity of LGBTQ organizations and prisoners, in violation of the Equal Protection Clause. Currently before the Court is Baldwin's motion for judgment on the pleadings on Plaintiff's individual capacity claims.

2

## II.     Legal Standard

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the parties have filed the complaint and answer.  See *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009); *Giannopoulos v. Iberia Lìneas Aèreas de España, S.A.*, 17 F. Supp. 3d 743, 746 (N.D. Ill. 2014).   "The standard for entering judgment on the pleadings is the same as that for dismissing a complaint for failure to state a claim: 'the complaint must state a claim that is plausible on its face.'"  *Armada (Singapore) PTE Ltd. v. Amcol Int'l Corp.*, 885 F.3d 1090, 1092 (7th Cir. 2018) (quoting *St. John v. Cach, LLC*, 822 F.3d 388, 389 (7th Cir. 2016)).  The Court reads the complaint and assesses its plausibility as a whole.  See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).  It is proper for the Court to "consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice."  *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir.2012)); see also Fed. R. Civ. P. 10(c).

## III.     Analysis

Baldwin moves for judgment on the pleadings on the basis that the complaint's allegations are insufficient to support a plausible claim that he is personally responsible for Plaintiff's constitutional injuries.  Baldwin argues that his involvement in drafting or establishing allegedly unconstitutional policies does not constitute sufficient personal involvement to hold him individually liable for any constitutional violations.  Baldwin also maintains that the complaint fails to allege any facts supporting Plaintiff's claim that Baldwin had actual knowledge of any censorship decisions.  In  response, Plaintiff identifies two potential paths for Baldwin's personal

liability, based on (1) the alleged systemic nature of censorship in the IDOC prisons; and (2) Baldwin's alleged role in setting, maintaining, and failing to correct policies that, when enforced, resulted in constitutional violations.

A defendant "must be personally responsible for a constitutional deprivation in order to be liable" in her individual capacity under § 1983. *Childress v. Walker*, 787 F.3d 433, 439 (7th Cir. 2015); see also *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (under § 1983 "a government official is only liable for his or her own misconduct"). "This means that to recover damages against a prison official acting in a supervisory role, a § 1983 plaintiff may not rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, has violated the Constitution." *Id*.

However, "personal responsibility is not limited to those who participate in the offending act." *Childress*, 787 F.3d at 439-40. Liability also "extends to those who, having a duty under the Constitution to the plaintiff, 'act[ ] or fail[ ] to act with a deliberate or reckless disregard of plaintiff's constitutional rights.'" *Id*. at 440 (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1012 (7th Cir. 2000)). "The factors necessary to establish a § 1983 violation against a prison official depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Perez*, 792 F.3d at 781. To establish a First Amendment violation against the Defendants in their individual capacity, Plaintiff "must show that in their supervisory role, they 'knowingly, willfully, or at least recklessly' caused a deprivation of [its] First Amendment rights." *Jacobsen v. Illinois Dep't of Transp.*, 419 F.3d 642, 649 (7th Cir. 2005) (citing *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986)).

In *Antonelli v. Sheahan*, 81 F.3d 1422 (1996), the Seventh Circuit recognized that high-ranking jail administrators, including the Director of the Cook County Department of Corrections

4

and Cook County Sheriff, were "far from most of the day-to-day decisions that may have affected inmates" and therefore could not "realistically be expected to be personally involved in resolving a situation pertaining to a particular inmate unless it were of the gravest nature." *Id*. at 1428-29. However, they could "be expected to know of or participate in creating systemic, as opposed to localized, situations." *Id*. at 1429.

To resolve Baldwin's motion for judgment on the pleadings, *Antonelli* instructs that the Court should determine whether Plaintiff has identified any "potentially systemic" conditions, or instead has alleged only "clearly localized" conditions. *Id*. "There is no bright-line test that determines when a condition is systemic rather than localized, but courts have found conditions to be systemic when they are 'unlikely to affect only one inmate in isolation.'" *Richard v. Pfister*, 2021 WL 3033543, at *3 (N.D. Ill. July 16, 2021) (quoting *Britton v. Williams*, 2017 WL 4410117, at *4 (N.D. Ill. Oct. 4, 2017)); see also *Silva v. Pfister*, 2021 WL 1103483, at *7 (N.D. Ill. Mar. 23, 2021). "Examples include restrictions on library access, tampering with the mail system, inadequate recreation or nutrition, vermin infestations, and extreme hot or cold temperatures, among others." *Eason v. Pritzker*, 2020 WL 6781794, at *5 (N.D. Ill. Nov. 18, 2020); see also *Richard*, 2021 WL 3033543, at *3 (listing examples). It may be "difficult to tell" at the pleading stage of the case "if the problem is non-systemic or systemic." *Jones v. Sheahan*, 2002 WL 959814, at *6 (N.D. Ill. May 9, 2002).

In this case, the complaint's allegations support a theory that Plaintiff's constitutional injury—its inability to communicate with prisoners, in violation of the First and Fourteenth Amendments—is a "potentially systemic" problem for which Baldwin could be found individually liable. *Antonelli*, 81 F.3d at 1429. The complaint alleges widespread instances of unlawful censorship and insufficient notice under the First and Fourteenth Amendments. It describes dozens

of censorship incidents, in at least 11 IDOC facilities, concerning publications, letters, and other mailings sent by Plaintiff to IDOC prisoners. See [42] at ¶¶ 41-86. The complaint also alleges that certain IDOC facilities implemented outright bans of Black & Pink publications and/or disciplined prisoners who received mail from Black & Pink. *Id.* at ¶¶ 49, 53, 76. The complaint further alleges that its constitutional rights were violated as a direct and proximate result of Defendants' policies and practices, which were the moving force behind the violations. *Id.* at ¶ 96.

These allegations plausibly suggest the existence of systemic constitutional violations likely to "affect[] a widespread group of inmates." *Eason*, 2020 WL 6781794, at *6. Therefore, it is reasonable to presume that high-ranking jail administrators like Baldwin "kn[e]w of or participate[d] in creating'" the situation. *Id.* (quoting *Antonelli*, 81 F.3d at 1429), and Plaintiff has sufficiently pled that Baldwin is individually liable under 42 U.S.C. § 1983. See, e.g., *Dodson v. Cook County Jail*, 2019 WL 764041, at *4 (N.D. Ill. Feb. 21, 2019) (denying motion to dismiss § 1983 prison conditions claim against Cook County Jail Director, where plaintiffs alleged systemic violations, including a rat infestation, "for which … the Director can be expected to have personal responsibility"); *Jones*, 2002 WL 959814, at *6 (denying Cook County Sheriff's motion to dismiss claim concerning the Cook County jail's mailroom procedures, where it was unclear why plaintiff's legal mail was being mishandled).

In addition, Plaintiff also plausibly alleges that Baldwin took part in the adoption, approval, or implementation of IDOC's unconstitutional policies that directly caused the censorship of Plaintiff's publications. "In the case of those responsible for setting policy, liability will result from the institution of a 'policy that, when enforced, causes a constitutional deprivation.'" *Childress*, 787 F.3d at 440 (quoting *Brokaw*, 235 F.3d at 1013); see also *Armstrong v. Squadrito*,

152 F.3d 564, 581 (7th Cir. 1998) ("if the supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act").

The complaint alleges that Baldwin, as IDOC Director, had the "ultimate responsibility for the promulgation and implementation of IDOC policies, procedures, and practices," [42] at ¶ 7, and that he personally participated in creating and implementing unconstitutional policies and practices that caused Plaintiff's injuries, *id*. at ¶¶ 2, 96-97, 104-105, 111-12. Comparable allegations have been found sufficient to support individual liability claims brought against jail officials with policymaking responsibility. See, e.g., *Childress*, 787 F.3d at 440 ("allegations that a prison administrator knew that the conditions of a prisoner's mandatory release included a ban on computer-related material, but nevertheless instituted, condoned, or willfully turned a blind eye to a practice that placed computer-related material among prisoners' possessions, state a claim for relief under the Eighth Amendment"); *Turner v. Cook County Sheriff's Office by & through Dart*, 2020 WL 1166186, at *4 (N.D. Mar. 11, Ill. 2020) (plaintiff, bringing suit as the special administrator for the estate of an individual who died of an overdose in jail, stated an individual capacity claim against Sheriff Dart where claim was "rooted in his alleged failure to implement policies that provide constitutionally adequate healthcare to detainees suffering from drug addiction and overdose" and "[b]ecause of his position, Sheriff Dart had final authority over Jail policies"); *Terry v. Cook County Dep't of Corrections*, 2010 WL 331720, at *3 (N.D. Ill. Jan. 22, 2010) (denying motion to dismiss individual capacity claim against Sheriff Dart where, "[r]ead in the light most favorable to Plaintiff, the amended complaint alleges that Dart failed to correct a deliberately indifferent policy that caused a constitutional injury").

To be sure, discovery may reveal that Baldwin's actual involvement in the policies and decisions about which Plaintiff complains was far less than Plaintiff supposes. But Plaintiff's

allegations clear the plausibility bar, both factually and legally, and Plaintiff's claims may move forward at this time—subject to further testing at the summary judgment stage.

## IV.     Conclusion

For these reasons, the Court denies Baldwin's motion for judgment on the pleadings [98].

Dated: August 4, 2022

_____
Robert M. Dow, Jr.
United States District Judge